UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KENDRA LALIBERTE :
:
v. : C.A. No. 13-515S
:
CAROLYN W. COLVIN :
Commissioner of the Social Security :
Administration :

# REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on July 10, 2013 seeking to reverse the decision of the Commissioner. On February 28, 2014, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 10). On April 7, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is not substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for DIB on January 4, 2010 (Tr. 159-160) and SSDI on September 29, 2010 alleging disability since January 1, 1995. (Tr. 147-156). The applications were denied initially on July 1, 2010 (Tr. 93-98) and on reconsideration on February 10, 2011. (Tr. 101-106). Plaintiff requested an Administrative hearing on March 25, 2011. (Tr. 107). On February 29, 2012, a hearing was held before Administrative Law Judge Donald Cole (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 42-79). The ALJ issued an unfavorable decision to Plaintiff on March 15, 2012. (Tr. 25-37). The Appeals Council denied Plaintiff's Request for Review on March 29, 2013, therefore the ALJ's decision became final. (Tr. 4-6). A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by rejecting the VE's opinion that her severe stutter precluded her from maintaining gainful employment.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly rejected portions of the VE's testimony which were outside of his area of expertise and irrelevant to his Step Five finding.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274

F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

**IV. THE LAW**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B. Developing the Record

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In

fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D. The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of a combination of impairments when determining whether an individual is disabled. <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. <u>Seavey</u>, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. <u>Deblois v. Sec'y of Health and Human Servs.</u>, 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. <u>Id.</u>

**E.      Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. <u>Seavey</u>, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). <u>Seavey</u>, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. <u>Id.</u>; <u>see also</u> <u>Heckler v. Campbell</u>, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. <u>Nguyen</u>, 172 F.3d at 36. In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### V. APPLICATION AND ANALYSIS

Plaintiff was twenty-two years old on the date of the ALJ's decision. (Tr. 49). Plaintiff graduated high school and attended one year of college. Id. Plaintiff worked in the past in the restaurant industry as a busgirl and counter server and in the retail industry as a cashier. (Tr. 218, 224). Plaintiff alleges disability due to stuttering, depression and anxiety. (Tr. 48).

Plaintiff received medical treatment at the Tri Town Health Center. (Tr. 314-321). She was treated by Dr. Steven Busselen on October 27, 2010. (Tr. 315-321). Dr. Busselen noted a history of anxiety/panic attacks and depression. (Tr. 315). He noted that the Plaintiff had a medical marijuana card and that she did not stutter when she smoked marijuana. Id. Dr. Busselen conducted a depression screen (PHQ-9) that yielded a score of 18, equal to moderately-severe depression. (Tr. 317). Upon examination he noted Plaintiff to have blunted affect. (Tr. 320). Diagnoses included Attention Deficit Hyperactivity Disorder ("ADHD"), panic disorder with agoraphobia and moderate panic and depression. Id.

Plaintiff also received mental health treatment at Gateway Healthcare. (Tr. 332-370). Her diagnoses included major depressive disorder, single episode, mild, and anxiety disorder NOS. (Tr. 345). She was treated by a mental health counselor, Barbara Friedman, LICSW, ACSW, who on February 2, 2011 noted a "severe stutter" in her mental status assessment. (Tr. 344). In counseling notes from March 2011, Ms. Friedman noted that the Plaintiff "struggles to communicate." (Tr. 360).

At the request of the state agency, Plaintiff was evaluated by Dr. Ghulam Mustafa Surti, a Psychiatrist, on June 25, 2010. (Tr. 291-295). Dr. Surti noted a history of stuttering and anxiety. (Tr. 291). He assessed the Plaintiff's mental status, and regarding concentration, noted that she "had difficulty doing serial 7s" and was "able to do serial 3s, but because of stuttering she had difficulty so she was able to write it down." (Tr. 292). Dr. Surti noted Plaintiff to be "in acute distress" with "affect anxious" and "nervous" mood. (Tr. 293). Dr. Surti described, "some stuttering and [she] had significant difficulty expressing herself at times because of stuttering, which seems to make her very frustrated and also it seems to get worse when she is very anxious." Id. Dr. Surti diagnosed Anxiety Disorder, NOS; Rule out ADD; Panic Disorder without agoraphobia. Id. He assessed a Global Assessment of Functioning ("GAF") score of 55 or moderate symptoms. Id.

In January and February 2011, Plaintiff was evaluated by Francis R. Sparadeo, Ph.D., at the request of the Rhode Island Department of Children, Youth and Families ("DCYF"). (Tr. 323-331). He conducted cognitive and psychological testing. Id. Dr. Sparadeo observed that Plaintiff "spoke in an audible tone marked by persistent stuttering. Her speech was frequently difficult to understand, as it tended to slow down prior to stuttering and then continue very rapidly (often mumbled or slurred)." (Tr. 324).

Dr. Sparadeo diagnosed ADHD – attentive type, major depressive disorder, a question of posttraumatic stress disorder, and a question of personality disorder NOS, with a GAF of 50 or serious symptoms. (Tr. 331).

Jeffrey Hughes, Ph.D. assessed the claim for the state agency on June 29, 2010. (Tr. 296-313). He assessed that Plaintiff would be able to remember and follow both simple and complex instructions; finish simple and complex tasks over the course of a normal "8/5/40" routine; and relate appropriately to coworkers and accept supervision. (Tr. 298). He further assessed that Plaintiff would have no degree of limitation related to restriction of activities of daily living; a moderate degree of limitation of difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (Tr. 310).

Stephen Clifford, Ph.D. affirmed the assessment of Dr. Hughes on February 9, 2011. (Tr. 322).

### A. The ALJ's Decision

The ALJ decided this case against Plaintiff at Step 5. At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that her reported earnings during the period were "part of a trial work period." (Tr. 30). The ALJ concluded at Step 2 that Plaintiff's speech impediment, depression, anxiety and ADHD were severe impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 31). However, at Step 3, the ALJ found that

these impairments did not, either singly or in combination, meet or medically equal any of the listed impairments. Id. The ALJ assessed an RFC to perform a full range of work from an exertional perspective with nonexertional limitations as to interaction with the public, co-workers and supervisors. (Tr. 32). Finally, at Step 5, the ALJ denied Plaintiff's claim because she was capable of performing other work that exists in significant numbers in the economy. (Tr. 37).

    **B.**  **The ALJ's Rejection of the VE's Opinion is Not Supported by Substantial Evidence**

At the hearing, the VE opined that a hypothetical person with the RFC assessed by the ALJ could not perform Plaintiff's prior work but could perform her current job and could work as a carder or machine tender. (Tr. 74-75). The ALJ then refined the hypothetical to a person with a severe stuttering problem similar to that displayed by Plaintiff during the hearing. (Tr. 76). The VE responded with the opinion that Plaintiff could not really perform the work she is doing now as a "mental retardation aide" because of concerns about her ability to communicate in an emergency. (Tr. 73, 77). He discussed generally how a particular employer may accommodate or tolerate communication difficulties but "overall, [his] answer would be that it would be very difficult for one to maintain any type of employment with this level of stuttering." (Tr. 78).

The ALJ rejected this opinion. He offered no legal support for his rejection. (Tr. 37). He simply disagreed with the VE's interpretation of Plaintiff's vocational history. Id. In other words, the ALJ had a difference of opinion with the VE on the vocational interpretation of the same facts. In particular, the ALJ observed that Plaintiff could secure work but left most of the jobs "voluntarily" due to taunting from co-workers and was treated better at her current job and would work more hours if offered. (Tr. 37).

After the VE opined that Plaintiff's level of stuttering would make it very difficult to maintain "any type of employment," the ALJ asked follow-up questions aimed at clarifying if the VE was opining

-13-

that there is no work available or that the numbers of positions available would be eroded. (Tr. 78). The VE clarified that there could be work available but because of the stigma attached to Plaintiff's stuttering, "she wouldn't be able to maintain employment and I think that's been showed over the course of her work history."[1] Id. The ALJ's response was "All right. Well, if that – okay, fair enough." Id. Since the VE expressly opined that someone with Plaintiff's level of stuttering could not maintain employment, Plaintiff's counsel declined to ask the VE any questions herself. (Tr. 79).

Under the regulations, the ALJ is permitted to call upon the services of a vocational expert "[i]f the issue in determining whether [the applicant is] disabled is whether [her] work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue." 20 C.F.R. §§ 404.1566(e) and 416.966(e); see also SSR No. 00-4p. The VE in this case, Mr. Albert Sabella, has over thirty years of experience in the field and has served as a VE in Social Security hearings since 1988. (Tr. 124). The Hearing Notice advised Mr. Sabella that his presence throughout the hearing was desired since his expert testimony would be based, in part, on the claimant's testimony. (Tr. 123). Mr. Sabella was invited to opine on "the kind of work, if any, the claimant can do in light of prior work activity and residual functional capacity considering age, education, training and work experience." (Tr. 126). Based on his vocational expertise and experience, his review of Plaintiff's work history and his first-hand observation of her undisputed severe stuttering condition, Mr. Sabella unequivocally opined that Plaintiff "wouldn't be able to maintain employment and I think that's been showed over the course of her work history." (Tr. 78). The ALJ's rejection of that opinion is simply a difference of opinion on the same facts. In other words, the ALJ is substituting his lay opinion for the expert opinion of the VE. However, it is the VE and not the ALJ who is an expert in vocational matters

---

[1] The record reflects that Plaintiff lost hours at her current job because of client complaints about communication difficulties (Tr. 51), lost a retail job because her supervisor complained that she could not communicate with Plaintiff (Tr. 62) and left a job at a donut shop because co-workers "weren't very nice" to her. (Tr. 56).

and was specifically retained and called to the hearing as a vocational resource due to such expertise. While there may be circumstances where an ALJ can reject a VE's opinion, such as where the VE has misstated or misinterpreted a fact upon which his opinion is based or the VE's opinion is based on the claimant's testimony which the ALJ has properly rejected as not credible, none of those circumstances are present in this case. The ALJ here simply disagrees with the VE's opinion but provides no legal or vocational support for his position. Accordingly, the ALJ's decision to reject the VE's unequivocal opinion that Plaintiff's stuttering disorder would prevent her from maintaining employment is not supported by substantial evidence and remand is warranted.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 10) be GRANTED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED. Further, I recommend that Final Judgment enter in favor of Plaintiff remanding this matter for further administrative proceedings consistent with this decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 29, 2014